# Winn, *et al. v.* Fitzwater, *et al.*

*Bill to Enjoin an Ejectment Suit, and Declare a Deed a Mortgage.*

(Decided May 29, 1907.  44 So. Rep. 97.)

1. *Mortgage; Deed as Mortgage.*—Where the grantor was indebted to the grantee in a sum less than the value of the land, and the debt was thereafter held as a continuing obligation, a deed given was properly held a mortgage, although absolute on its face.

2. *Parties; Necessary Parties; Persons Holding Legal Title.*—The heirs are necessary parties defendant to a bill to enjoin an ejectment suit and to declare a deed a mortgage, where the bill is filed against the administrator of their ancestor.

3. *Same; Defect; Right of Court to Notice.*—The failure to make necessary parties respondents to a bill may be noticed ex mero motu by the court without objection thereto being made by demurrer.

4. *Equity; Stale Demand; Limitations.*—Where a note was barred by limitation before the debt evidenced by the deed was created, such demand could not be made the subject of a credit upon the debt evidenced by the deed, under a bill to declare the deed a mortgage and for an accounting.

5. *Same; Pleading; Demurrer.*—The objection that the debt sought to be made a credit was barred by the stattue of limitation before the debt evidenced by the deed was created, was a proper subject for demurrer to a bill to declare the deed evidencing the debt a mortgage and for an accounting.

APPEAL from Tallapoosa Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Eva J. Fitzwater, and others to declare a deed absolute on its face a mortgage, and for an accounting, against W. H. Winn, as administrator, and others. From a decree for complainants appeal. Reversed and remanded.

JAMES W. STROTHER, for appellants.—A power to make a deed does not confer authority to make a mortgage.—*Butler v. Gazzan*, 81 Ala. 491. One cannot maintain a bill to cancel a deed and to redeem under it.—

*Micou v. Ashurst,* 55 Ala. 607. Such a position is inconsistent.—*Williams v. Cooper,* 107 Ala. 246. To declare a deed absolute on its face to be a mortgage the proof should be clear, consistent. strong and convincing.—*Knauss v. Dreher,* 84 Ala. 319; *Reeves v. Abercrombie,* 108 Ala. 535; *Deering v. Woodstock Co.,* 93 Ala. 262.

In order to stamp a deed absolute in form as a mortgage it must be shown there was a subsisting and continuing debt from the grantor to the grantee.—*Douglas v. Moody,* 80 Ala. 61; *Mitchell v. Wellman,* 80 Ala. 16.

LACKEY & BRIDGES, for appellees.—When the facts show the existence of a debt at the time of the transaction, and a great disparity between the value of the property and the consideration passing for it, they tend in a great measure to show that the transaction was intended by the parties to operate as a mortgage, as does also the fact that the grantor has been allowed to remain in the uninterrupted possession of the land without paying for the use and occupation thereof.—*Rose v. Gandy,* 137 Ala. 329; *Turner v. Wilkinson,* 72 Ala. 361; Pom. Eq. Jur. § 1196, p. 1824 (Vol. 3) ; *Shrieve v. McGowan,* 42 So. Rep. 64. Parties cannot act upon and adopt such parts of a transaction as are favorable and beneficial to themselves and at the same time repudiate it in so far as it may involve them in duties to others.—*Goodman v. Winter,* 64 Ala. 410; 3 Mayfield's Dig. p. 410, §§ 2, 6, 7 and 8. Where a controversy is whether the transaction was intended as a conditional sale with reservation of right to re-purchase, or as a mortgage, a court of equity inclines to favor the latter construction, carrying with it the right to redeem.—*Glass v. Hieronymus Bros.,* 125 Ala. 140; *Turner v. Wilkinson,* 72 Ala. 631. Parol evidence is admissible to prove that a deed absolute on its face was intended to operate as a mortgage.—*Turner v. Wilkinson, supra; Shreve v. Mc-*

*Gowan,* (Ala.) 42 So. Rep. 94; *Daniel v. Lowry,* 92 Ala. 519; *Peagler v. Stahler,* 91 Ala. 308.

HARALSON, J.—James H. Lowry was the executor of the will of A. J. Lowry. The will of said A. J. Lowry in its sixth item provides: "I do hereby constitute and appoint him (James H. Lowry), executor of this my last will and testament, with full power to sell at public or private sale, and wthout any order of court, any lands or property that may be necessary to be sold for the payment of any debt I may owe at my death, and in view of this confidence and trust of my beloved son, I expressly will and desire that upon granting letters of executorship, that my said son, shall not be required to execute any bond, the same being hereby waived."

The wife of James H. Lowry, by item 5 of the will, was made alternate executrix, in the event of the death of said James H. Lowry.

Item 7 provides: "That the control and management of said property by my son and his wife, Mary Lowry, shall continue during their lives, first, under the control of James H. Lowry, and if he should die and his wife, Mary, survive him, then his wife, Mary Lowry, and I expressly will and desire, that while the title of the property, real and personal, and the rents, vests in the children of said James H. Lowry, yet the said James H. Lowry, during his life shall have a right to use the rents and profits, without any liability to account for the same, and in the event of his death, his wife, Mary Lowry, shall have like authority, this provision being made in the confidence that my son and his wife will properly clothe and support said children."

On the death of said A. J. Lowry, F. A. Vaughan, as is shown, claimed to be a creditor of his estate, to the amount of $968.29, and he pressed said James H., as executor, to pay the same; and said James H., as executor,

on the 25th of August, 1898, executed to said Vaughan what purported to be an absolute deed to the real estate belonging to the said A. J. Lowry, at his death. The bill avers (section 12) that while said instrument appears to be an absolute deed, it was understood and agreed between the said F. A. Vaughan and James H. Lowry, at the time said deed was executed, that the same was to secure the past due indebtedness; that the said Lowry was to be, and did remain, in possession of said lands therein conveyed, up to the present time; and that it was further understood and agreed, at the time of the execution of said paper, that the said James H. Lowry should make payments on the same, from time to time, as he was able, and that he should remain in possession of said property undisturbed until he could pay the amount therein claimed to be due, and it was distinctly understood, that the said deed was to operate only and solely as a security for the amount claimed to be due from the said Lowry as executor of said A. J. Lowry, deceased, and when all of said indebtedness was paid, that the said Vaughan would surrender said deed and convey all his right, title and interest in and to said lands, back to the said James H. Lowry as such executor. It is further charged, that at the time said deed was executed, on a fair settlement there was nothing due from said J. H. Lowry to said F. A. Vaughan; that said land conveyed in said deed was worth the sum of $2,000, at the time of said conveyance, and complainants aver, that they are ready and willing to pay any amount that may be due from the estate of A. J. Lowry, deceased, to the said F. A. Vaughan, at the time of the filing of this bill, or at the time of the rendition of decree thereon, and that since the making of said deed, the said J. H. Lowry has made various and sundry payments thereon. amounting to more than $300.

[Winn, et al. v. Fitzwater, et al.]

It was further shown, that said F. A. Vaughan died intestate in July, 1892, in Tallapoosa county, and that W. H. Wynn, the defendant, was duly appointed and is now the administrator of the estate of said deceased, and on the 25th of February, 1905, as such administrator, he commenced his suit in electment in the circuit court of said county, against James H. Lowry, for the possession of the lands described in the bill, purporting to have been conveyed to said deceased by said deed, which suit is now pending in said court. Complainants offer to pay to said Wynn, as such admnistrator, whatever sum may be really, fairly and honestly due from the estate of said A. J. Lowry, deceased, to the estate of said F. A. Vaughan, deceased, and submit themselves to the jurisdiction of the court for all purposes connected with and incident to the foreclosure of said instrument above mentioned.

The payer is for an injunction against said Wynn, as administrator, pending this suit, from prosecuting his said suit in ejectment against said James H. Lowry for the possession of said lands; and, on a final hearing, for a decreee declaring said deed to be a mortgage to secure the indebtedness due by the estate of said A. J. Lowry, deceased, to said F. A. Vaughan and to his administrator, W. H. Wynn, and for a reference to the register to ascertain the amount due on said mortgage, after excluding all matters not properly chargeable against the estate of said A. J. Lowry; and after deducting all payments that have been made thereon, and any indebtedness due from said Vaughan to said A. J. Lowry, as set up in the bill, and that upon the payment of such balance as may be found due the estate of said Vaughan, or to his administrator, Wynn, that said mortgage be declared void and of no effect, and for a divestiture of title out of the estate of said Vaughan, his heirs and administrators, and the investiture of same in complain-

ants, as fully as if said instrument purporting to be a deed had never been made, and for a perpetual injunction against said Wynn and his successors from the prosecution of said ejectment suit. There was, also, a prayer for general relief.

The defendant demurred to the bill on many grounds, and moved the court to dismiss it for want of equity. One of the grounds of demurrer was, that a certain note made by Steiner and Vaughan and Wright, was, as shown by the bill, barred by the statute of limitations and by the statute of nonclaim as against the estate of said Vaughan.

The chancellor was of opinion that, if true as alleged in the bill, that said deed was to operate as a mortgage; that it was understood and agreed between the said Vaughan and J. H. Lowry, at the time said deed was executed, that the same was to secure past due indebtedness; that Lowry was to remain in possession of said lands and make payments on said indebtedness, from time to time, until he could pay such indebtedness, and it was distinctly understood that said deed was to operate only and solely as a security for the amount claimed by said Vaughan to be due from said Lowry as executor, and that said Lowry made payments thereon, and the parties treated said deed as a mortgage, then the court was of opinion that it would be inequitable and unjust to complainants to suffer said deed to stand as an absolute conveyance, especially since complainants offer to do equity by paying the debts said deed was intended to secure. The demurrers to the bill and the motion to dismiss were separately overruled.

In this case, the evidence is conclusive, that a debt existed from Lowry to Vaughan, prior to and at the time of the execution of the deed. The recitals of the deed itself, show this fact, aside from the other evidence in the case.

It also appears, that the debt was held, after the execution of the deed, as a continuing obligation. It was shown that Henry Davis, who desired to rent the land after the deed was executed, applied to Vaughan to do so, and he told him that he had nothing to do with the land, and that if he, Davis, rented it, he would have to do so from Mr. Lowry, and that it was not his (Vaughan's) land. W. A. Gunn testified, that he heard this conversation between Vaughan and Davis, and fully corroborated Davis' evidence. He also testified, that he rented the land for five years from A. J. Lowry and paid him the rents each year and that Mr. Vaughan requested him to tell Mrs. Lowry that her husband had paid him $41 or $42 on the debt, and said, "she is not satisfied about the paper I made Jim (J. H. Lowry) give me, and seems to want to know what is paid on it."

C. M. Corpew and G. J. Sorrell both testified, that they, each, desired to purchase portions of this land and spoke to F. A. Vaughan about it, and he referred each of them to J. H. Lowry, and told them, if they could trade with him, it would be all right with him, so that he got the money on what Lowry was owing him.

It was shown that the land was worth from $1,000 to $3,000.

It was shown, that F. A. Vaughan sold and conveyed to C. M. Corprew a portion of the land, and Lowry was to have credit for the amount paid to Vaughan. The sum paid as a consideration for the land was $85, and a deed was executed to him by Vaughan for what he bought, dated May 12, 1900, which amount was allowed as a credit to the Lowry estate by the register.

The chancellor decided that complainants were entitled to have the deed made and executed by Jas. H. Lowry, deceased, as executor of the will of A. J. Lowry, deceased, to said Vaughan, cancelled as to all the lands therein conveyed, except such parts of said lands as

12 R

were conveyed by said Vaughan to said Corprew, upon the payment by complainants to said Wynn as administrator of the estate of said Vaughan, of the amount of money with interest thereon which was due from the estate of A. J. Lowry, deceased, to said Vaughan, such cancellation not to be made until such payment was made, or until the amount was paid into court for said Wynn, as administrator.

The register was directed to ascertain and report to the court what amount was due from the estate of said A. J. Lowry to the said Vaughan, with interest thereon to the date of the next regular term of the court, and also to ascertain what lands were sold by said Vaughan to said Corprew, with an accurate description of them. This reference the register executed, in accordance with said decree, and ascertained that the sum of $42.39, including interest, was due the said Vaughan, and so reported to the court.

In *Turner v. Wilkinson,* 72 Ala. 366, the rule is stated for determining whether a particular transaction was a mortgage, viz.: "Did the relation of debtor and creditor exist, before and at the time of the transaction? or, if not, did the transaction commence in a negotiation for a loan of money? Was there great disparity between the value of the property, and the consideration passing for it? Is there a debt continuing, for the payment of which the vendor is liable? If any of these facts is found to exist, in a doubtful case, it will go far to show a mortgage was intended. If all of them are found concurring, the transaction will be regarded as a mortgage."

From the facts as stated above, it will be seen that all these tests for a mortgage security existed, and there was no error in the decree of the chancellor in so holding.

[Winn, et al. v. Fitzwater, et al.]

The respondent urges in argument, that the bill should be dismissed for the reason that the complainants are seeking by their bill, to have the legal title divested out of one party and invested in another, without having the legal title before the court; that the legal title to these lands, on the death of said Vaughan, vested in his heirs, who are not made parties to the bill. This is the general rule.—*Smith v. Murphy*, 58 Ala. 630. This rule prevails unless it is shown that the interest of the heirs has ceased, or has become vested in some other person who is a party.—*Perkins v. B. L. & C. Co.*, 77 Ala. 403; *Rose v. Gandy*, 137 Ala. 329, 34 South. 239.

In this case no objection was made to the bill by demurrer or otherwise, for the want of proper or necessary parties.

The rule, however, seems to be inflexible, that all persons who have a material interest in the litigation, or who are legally or beneficially interested in the subject-matter of the suit, and whose rights or interests are sought to be concluded thereby, are necessary parties.— *Perkins v. B. I. & C. Co.*, *supra*; *McKay v. Broad*, 70 Ala. 378; *Smith v. Murphy, supra*; Story's Eq. Pl. § 72; 3 Mayfield's Dig. pp. 254-256.

We have been unable to discover, why the heirs of Vaughan were not necessary parties to the bill, a defect of which the chancellor, ex mero motu, without objection by demurrer, may notice.—*Goodman v. Benham*, 16 Ala. 625.

The register in stating the account of A. J. Lowry, deceased, with said F. A. Vaughan, allowed as a credit to said Lowry, the amount of Steiner, Vaughan and Wright's notes for $300, dated October 27, 1879 due 25th December, 1884, with interest, amounting to $246.07. The defendant objected by demurrer that the bill was without equity as to this claim because the same was barred by the statute of limitations. This mode of

[Rosebrook v. Baker.]

defense was allowable, and the note was subject to the bar of the statute of limitations. The statute of limitations perfected a bar against it before the accrual of any claim which Vaughan had against A. J. Lowry. The complainant, therefore, should not have been allowed a credit for this note on the accounting.—*Lovelace v. Hutchinson*, 106 Ala. 418, 17 South. 623.

The defendant objected to the allowance of this claim, on the reference, on the grounds stated.

For the errors indicated, the decree below is reversed and the cause remanded.

Reversed and remanded.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.